ILLINOIS CENTRAL RAILROAD COMPANY, Plaintiff-Appellee, *v.* MATTHEWS TRANSFER COMPANY, INC., Defendant-Appellant.

( No. 11279;

Fourth District—May 13, 1971.

*Rehearing denied June 15, 1971.*

Earl R. Bice and Daniel J. Greer, both of Springfield, for appellant.

Graham & Graham, of Springfield, (Thomas Donald Henson, of counsel,) for appellee.

Mr. JUSTICE RICHARDS delivered the opinion of the court:

This is an appeal by the defendant from a judgment of $1865 for demurrage charges assessed by the plaintiff on railroad cars which were delivered to and detained by the defendant, as consignee, during the months of October and November, 1964. That some demurrage charges are due the plaintiff is not disputed, but the defendant contends that some of the charges are not recoverable under the applicable tariff accepted by the defendant on September 23, 1964. By such the defendant, as consignee, was required to promptly unload cars delivered to its dock and was given 48 hours from the first seven o'clock A.M. after delivery for such unloading. This 48-hour period was referred to in the tariff as "free time" or time the cars could be detained without charge. After that demurrage charges were assessed for the days the consignee detained

the cars or the days expiring before the consignee accepted and unloaded the cars that the plaintiff had notified the defendant were held in its yard and were ready for delivery to defendant's dock. The demurrage charges were such that the longer the cars were detained the higher the daily rates were.

The defendant maintained its warehouse and owned the spur track next to it upon which cars were delivered by the plaintiff for unloading. The spur track held five to seven cars, depending upon their size, and extended from the defendant's warehouse to the railroad's property and was there connected to another length of track which ran from the defendant's property to the main line of plaintiff's railroad. The connecting link of track from the spur track to the main line of the railroad was called the "lead track" and held four or five cars, depending upon their size. The lead track ran only from the main line of the plaintiff's railroad to defendant's spur track and served no other purpose than to connect the spur track with the main line. Accordingly, we are here concerned with three areas of tracks, that is, the spur track which belonged to the defendant and the lead track and the main line tracks, both of which belonged to the plaintiff and were located on the plaintiff's property. The plaintiff serviced the defendant once each night by removing the empty cars from the defendant's spur and replacing them with loaded cars. The free time would start when the cars were so delivered or, if there was not enough room on the defendant's spur track for the cars waiting to be unloaded, the plaintiff would, by the terms of the agreement, report in writing to the defendant of other cars that had been received and were being held in the plaintiff's yard, and the free time on those cars would start after such notice.

■■ The disputed charges here involve two different questions. One has to do with cars that were held for the defendant and were neither on the defendant's spur track nor held by the plaintiff in its yards on notice to the defendant but rather were charges on cars that were left by the plaintiff on the lead track without written notice to the defendant that such cars were being so held. The liability of the defendant for demurrage charges for the time these cars were left on the lead track depends upon the interpretation of the wording of the tariff. The provisions therein provided that if the cars were left on the private or other-than-public-delivery tracks serving the defendant, such would be considered constructively placed for unloading and the free time would begin to run, and if held beyond the free-time period, the demurrage charges would start. The plaintiff contends that the lead track, although it was the property of the plaintiff only, was an other-than-public-delivery track serving the defendant and argues that if the lead track had been

leased to the defendant then under the authority of *Granger v. Davis*, 2 F.2d 695, the lead track would have been an other-than-public-delivery track as such would have been considered the equivalent to ownership and treated as private track. The plaintiff further contends that as the lead track in question was exclusively devoted to the defendant's use and the cars thereon were in easy view of the officers and employees of the defendant, the intent of the tariff was to include the lead track as other-than-public-delivery track which required no written notice of the presence of the cars in order to start the free-time period and the subsequent demurrage charge. The defendant contends that the cars were left on the lead track by the plaintiff merely for plaintiff's convenience in storing the cars consigned to the defendant; that the defendant had no right, legal or other, to use the lead track which was under the plaintiff's control, and also cites the *Granger* case as authority for its position, stating that the *Granger* case held that the track in question there was other-than-public-delivery track by virtue of a written lease of the railroad's property and the lessees were the only ones having the legal right to use such track. Nothing in this record shows that the plaintiff had ever indicated to the defendant or informed the defendant that the cars standing on the lead track were regarded the same as cars actually delivered to the defendant on its spur track, nor is there anything in the record to indicate that the plaintiff had assigned the lead track to the defendant for the defendant's use. The agreement had here between the parties provided for such an assignment as the following appears therein:

"When a track or portion thereof owned or operated by this railroad is assigned to the purpose of its user through a written lease or written agreement, such lease or agreement will be considered as equivalent to ownership and the track or portion thereof treated as a private track * * *."

Accordingly, by the agreement between the parties, if the plaintiff had chosen to treat the lead track as the private track of the defendant, a written lease or agreement to that effect could have been made. Lacking this and without anything in the record to establish that the defendant was actually aware that charges for demurrage were being run up for cars standing on the lead track, we hold that the defendant is not liable for those charges made for cars detained by the defendant during the time they stood on the lead track as such track could not be regarded as other-than-public-delivery track under the terms of the agreement nor the facts shown by the record. The plaintiff, not having given the defendant written notice of the presence of these cars, could not charge demurrage for the time such were so held on the lead track.

■■■ The other question to be determined has to do with the legality of demurrage charges levied by the plaintiff on cars held in its switchyards which the defendant contends were run around by other cars arriving later and thus held at a higher daily rate than if they had been properly placed. To sustain the charges on these cars the record shows that the plaintiff had notified the defendant of the cars being so held in the yard, giving the defendant the names and numbers of the cars, their contents, the date they were constructively placed for unloading and that the time for unloading had commenced. Further, the plaintiff's yardmaster testified that it was the general practice of the railroad that those cars first received would be placed at defendant's dock before subsequently received cars. The plaintiff contends that even if run-arounds did occur such was an affirmative defense to the charges and such defense not having been made by the defendant in its pleadings, the defendant could not raise it at this time. Irrespective of whether this matter was part of plaintiff's proof as a condition precedent to recovery or was, as the plaintiff contends, a matter of defense, the question was raised by the defendant in its pleadings. Paragraph 8 of defendant's answer alleged that the unpaid charges originated "by reason of the failure of the plaintiff to properly place in the switching area at defendant's plant the cars which the defendant was ready and willing to unload had they been placed in the proper position by the plaintiff." Paragraph 9 of defendant's answer alleged that the plaintiff "failed to properly place the cars consigned to the defendant, * * * for that reason, the demurrage charges accrued wholly without fault on the part of the defendant." Such pleading did, under section 42 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 42(2)), contain information which reasonably informed the plaintiff of the nature of the defense. It is also the contention of the plaintiff that the judgment of the circuit court regarding the demurrage charges due on the cars held in the plaintiff's yard was based on finding of facts and should not be disturbed unless clearly contrary to the manifest weight of the evidence. We hold that some of the charges for demurrage on cars in this category were definitely against the manifest weight of the evidence. In evidence is the daily record of the plaintiff's chief clerk identifying all of the cars consigned to the defendant during the two months in question. Such record shows the name and number of each car, the contents, the date actually placed and the date, if any, of the constructive notice which was mailed as to each car, the date each car was released, and the number of days the cars were held for or by the defendant. The defendant pointed out in its brief actual instances shown by the plaintiff's records where some cars were received after other cars and were run around the cars already being held and

for which demurrage charges were being levied by the plaintiff. Such actual business records of these cars would take precedence as evidence over the testimony of the plaintiff's yardmaster as to the general practice of the plaintiff in delivering cars to a consignee.

The judgment of the circuit court is accordingly reversed as to part of the judgment for demurrage charges levied by the plaintiff and this case is remanded to determine the demurrage charges proved by the plaintiff to have accrued on cars properly placed on defendant's spur track only and not on the lead track, and to determine the amount of demurrage which would have accrued as to the cars held by the plaintiff in its yards for the defendant had there not been the run-arounds shown by the plaintiff's records.

Affirmed in part, reversed in part, and remanded with directions.

SMITH, P. J., and CRAVEN, J., concur.